IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                    CRIMINAL ACTION NO. 2:11-cr-00191

RANDALL JUSTIN MCGEE,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Randall Justin McGee's renewed Motion to Suppress Evidence and Dismiss the Indictment [Docket 51]. The United States responded to the motion on December 8, 2011, and the Court held a hearing on the renewed motion on January 4, 2012. For the reasons set forth below, the motion is **DENIED**.

*I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

On October 3, 2011, Defendant filed a motion to suppress evidence. (Docket 25.) The Court heard the parties on the motion and denied the motion by memorandum opinion and order dated October 27, 2011. (Docket 44.) The facts of this case were summarized by the Court in its October 27 order, and as such, only facts developed and presented to the Court subsequent to that date will be set forth in this opinion.

Shortly following the October 27 order, Defendant was able to locate the 2010 Silver Dodge Avenger owned by Enterprise Rent-A-Car Company and stopped by Officer J.K. Halstead on July 26, 2011. An investigator acting on Defendant's behalf examined and documented the vehicle's

functionality on November 18, 2011, in Louisville, Kentucky. (Docket 51 at 1-2.) Defendant's investigator testified at the hearing that all three brake lights on the Avenger were fully operational and functioning properly upon his examination on November 18. Defendant also introduced records concerning the rental and repair history of the Avenger. According to those records, the only repair performed on the Avenger between April 29, 2010, and November 18, 2011—which constitutes the full duration of Enterprise's ownership—was an oil change on August 8, 2011. (Docket 67-6.) Defendant believes his evidence establishes "that there was no defective brake light on the Silver Dodge Avenger justifying any traffic stop on July 26, 2011[.]" (Docket 51 at 3.) Accordingly, Defendant seeks to suppress the drugs seized from his person based on the perceived lack of probable cause to stop the vehicle.

Defendant also argues that the vehicle rental records establish that there was a valid rental agreement in place at the time of the stop. In support of this argument, Defendant produced rental records from Enterprise, which establish that the Avenger was rented in the name of Trina Boyd on July 19, 2011, and returned on July 27, 2011. (Docket 67-3.) Based on these records, Defendant argues that there existed a valid rental agreement and that there "was no issue presented by the rental agreement relative to the duration of the stop, other than perhaps to confirm with the identified renter that she had authorized Mr. Moore to drive it on his trip . . . ." (Docket 51 at 3.)

Finally, Defendant raises a series of concerns about the practices of MDENT in handling this case. He asserts that the practice of MDENT officers to turn off their in-car video supports his argument that the Avenger's center brake light was, in fact, operational on the day of the stop. Defendant also points to the lack of evidence establishing the non-operational brake light, which is limited to the uncorroborated testimony of Officer Halstead. Defendant further argues that the stop

2

of the Avenger was not a random event, citing an exchange between Kardell Moore and Officer Halstead concerning Moore's whereabouts two days prior to the traffic stop.

The United States responds that although uncorroborated, Officer Halstead's testimony regarding the non-operational center brake light is credible. The United States points out that the absence of a maintenance record does not establish that the Avenger's brake light was operational on the day of the stop. (Docket 60 at 3 n.1.) The United States also responds that Defendant's concerns about an ongoing investigation are unfounded and irrelevant to the legal analysis at issue. Finally, the United States argues that the rental agreement's validity had no bearing on the Court's determination on the prior motion to suppress. (*Id.* at 5.)

## II. DISCUSSION

### A. Probable Cause to Initiate the Stop

On a defendant's motion to suppress evidence seized during a warrantless search, the United States bears the burden of proving by a preponderance of the evidence that the search or seizure did not violate the Fourth Amendment. *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) (noting that "the controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence"); *see also United States v. Breit*, 712 F.2d 81, 83 (4th Cir. 1983); *United States v. Helms*, 703 F.2d 759, 763-64 (4th Cir. 1983). The United States relies exclusively on Officer Halstead's testimony to meet its burden of proving that the initial stop was adequately supported by probable cause. In the October 27 opinion, the Court stated:

> McGee first challenges the legitimacy of the original traffic stop by questioning the veracity of Officer Halstead's testimony that the Dodge Avenger had a defective center brake light. (Docket 25 at 6-7.) "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). There was no evidence offered to refute Officer Halstead's testimony that

> the vehicle's center brake light was defective, nor was legal argument presented on whether such a defect indeed constitutes a traffic violation. In West Virginia, as in many other states, it is illegal for a vehicle to feature non-operational brake lights, regardless of the number of such lights. *See* W. Va. Code § 17C-15-18(b) ("When a vehicle is equipped with a stop lamp or other signal lamps, such lamp or lamps shall at all times be maintained in good working condition."); *see also United States v. Young*, 75 F. App'x 118, 120 (4th Cir. 2003) (unpublished opinion) (applying § 17C-15-18(b) to a vehicle with one operational and one non-operational brake light, and holding a traffic stop on this basis adequately supported by probable cause). Officer Halstead's testimony was entirely credible. On the record before the Court, Officer Halstead had probable cause to believe that the driver of the Dodge Avenger had committed a traffic violation, and the stop was therefore constitutionally sound.

(Docket 44 at 9.) Defendant essentially reiterates his challenge to Officer Halstead's asserted basis for the stop, this time with rental and repair records in hand. The evidence uncovered by Defendant and his investigator establish a fairly comprehensive history for the vehicle at issue in this case. According to the records furnished by Enterprise, which were explained at length by a company representative at the hearing, the Avenger's brake lights were fully functional at the time of sale on November 18, 2011, and Enterprise never performed any maintenance or repair on the Avenger's brake lights. The conclusion Defendant seeks to draw from the records, then, is that the brake light was operational on July 26, 2011.

Although Defendant's evidence raises a serious factual issue, it is ultimately insufficient to overcome Officer Halstead's direct and unimpeached testimony that the Avenger's center brake light was indeed nonoperational on July 26, 2011. The Court referred to Officer Halstead as "entirely credible" after the first hearing, and that finding is reaffirmed by the consistent and independently credible testimony Officer Halstead gave at the hearing on Defendant's renewed motion. Officer Halstead's demeanor was frank and earnest, and his recollection of the events of July 26, 2011, was unwavering. He unequivocally maintained that the Avenger's brake light was out, despite Defendant's best efforts to detract from that testimony. As Officer Halstead's firsthand observations

are the only direct evidence of the condition of the Avenger's brake lights on July 26, 2011, and his credibility has remained unimpeached throughout the pretrial motions practice in this case, the Court finds that the United States has met its burden of showing, by a preponderance of the evidence, that initial stop was lawful.

In practical terms, the Court can either believe Officer Halstead's testimony or infer from Defendant's records that the Avenger's brake lights were operational on July 26.[1] As the United States points out, however, there exist at least two plausible explanations for the records—first, a mechanical issue (such as an electric short) could have caused a temporary malfunction in the center brake light; and second, a repair could have been performed on the Avenger's center brake light and no record kept of it. Regarding the latter of these two possibilities, Defendant had a representative from Enterprise testify that all repairs are recorded internally as a matter of course. While the Court found the Enterprise representative credible as well, it may be the case that record-keeping procedures simply were not followed by one of Enterprise's many franchises, for whatever reason. In any case, the records are not direct evidence of the Avenger's condition on the day of the stop; Officer Halstead's testimony is. The Court has weighed the testimony after careful observation and determined Officer Halstead to be credible. The records are therefore insufficient to overcome the officer's testimony.

---

[1] Defendant also attempted to diminish Officer Halstead's credibility by asking questions about his experience and observations. Defendant established that at the time of the stop, (1) Officer Halstead had worked highway interdiction for three to four months; (2) Officer Halstead was three to four lengths behind the Avenger when he initiated the stop; and (3) the time of day was approximately 12:30 p.m. and the weather was sunny. In the face of questioning about his observations and experience, Officer Halstead maintained that he clearly observed the Avenger's center brake light fail to illuminate.

*B. Rental Agreement*

In his motion, Defendant also argues that a valid rental agreement existed for the Avenger at the time of the stop. Again, at the risk of making Defendant's arguments for him, it appears as though Defendant once again challenges the duration of the stop based on new evidence that he asserts proves the existence of a valid rental agreement. This argument fails for several reasons. First, as the United States correctly argues, the Court's previous ruling was that "the duration of the stop did not exceed what was reasonable under the circumstances to accomplish the objectives of the initial stop" and therefore "the Court need not address McGee's argument that the officers possessed no independent reasonable, articulable suspicion to prolong the stop or initiate a pat-down." (Docket 44 at 13-14.) In other words, the constitutionality of the seizure was upheld on grounds that did not include the rental agreement or the officers' perceptions thereof.[2] Second, even if the rental agreement was valid, it still raised questions for the officers. Specifically, they would presumably want to clear up why neither the driver, who admitted his license was suspended, nor the passenger were the person listed on the rental agreement and whether they had the permission of the person on the agreement to drive the vehicle. Third and finally, it must be noted that the records produced by Defendant do not necessarily establish the existence of a valid rental agreement at the time of the stop. Those records appear to be internal rental records, compiled by Enterprise after a vehicle is returned. They demonstrate that the Avenger was rented out on July 19, 2011, at 5:11 p.m. and returned on July 27, 2011, at 10:07 a.m. (Docket 52-1.) The records further show that

---

[2] At the hearing, Defendant's attorney stated that the basis for the new motion to suppress was "the lawfulness of the stop itself as opposed to prolonging it and searching [the Defendant] without having reasonable suspicion, which was the basis of [the] first motion." Defendant nonetheless appears to argue both points in his briefing.

6

the renter, Trina Boyd, paid a deposit of $315.74 at the time of rental. Based on the standard charges set forth in the records, however, the deposit was sufficient to cover rental charges for, at most four and a half days.[3] No evidence was introduced regarding any rental documentation that was actually present in the Avenger on July 26, 2011, or what information was available to Officer Halstead by virtue of any such documentation. The validity of the rental agreement is at best debatable and, in any event, irrelevant, as discussed above.

### III. CONCLUSION

For the foregoing reasons, the renewed Motion to Suppress Evidence and Dismiss the Indictment [Docket 51] is **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

    ENTER:    January 18, 2012

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

[3] The records indicate that the daily rental charge was $47.39, the daily damage waiver was $17.99, and the daily personal insurance fee was $3.00, for a total daily rate of at least $68.38 before tax. At this rate, the deposit covers approximately four and a half days, or until July 24, 2011. The weekly rate, including additional charges, also exceeds the amount of the deposit.